Joel A. Beck [ISB No. 6482]
Ruchti & Beck Law Offices
Oakley Building
1950 E. Clark Street, Suite 200
Pocatello, Idaho 83201
Telephone No. (208) 478-5100
Facsimile No. (208) 232-5100
Email: joel@idaholaw.us

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DOUGLAS G. HARMON, <br><br> Plaintiff, <br><br> vs. <br><br><br> THE UNITED STATES OF AMERICA, acting by and through BUREAU OF INDIAN AFFAIRS, <br><br> Defendant. | CIVIL NO. 4:15-cv-00173-BLW <br><br> **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SPOILATION FINDING** |

COMES NOW Plaintiff, Douglas G. Harmon, by and through undersigned counsel of record, and hereby files his Memorandum in Support of Plaintiff's Motion for Spoilation Finding. By his Motion, Plaintiff seeks an order from the Court applying the spoilation doctrine in this case. Plaintiff's Motion should be granted for the reasons stated below.

**I.   INTRODUCTION AND BACKGROUND**

Plaintiff Doug Harmon filed this action against the United States of American and the Bureau of Indian Affairs (BIA), a governmental agency. The BIA operates the Fort Hall

Irrigation Project (FHIP).  For purposes of this Motion, the BIA and its subsidiary, FHIP, shall collectively be referred to as the FHIP.  Plaintiff alleges in his Complaint that the FHIP failed to properly administer the water delivery systems on the FHIP resulting in multiple flooding events in 2012 that damaged crops on an adjacent parcel where Plaintiff farmed potatoes (the "Harmon parcel").  A detailed summary of the basic facts are set forth in the Statement of Disputed Material Facts in Opposition to Defendant's Motion for Summary Judgment.  [Docket 16-1]

The FHIP denies that it owed a duty of care to Plaintiff to control the flow of irrigation water to a dilapidated ditch system that flooded the Harmon parcel.  In particular, the Plaintiff contends that the FHIP failed to maintain a ditch delivery system providing water from the FHIP canal system to property owned by Lloyd Yupe property and to a family with the last name of Lutz, referred to hereinafter as the Yupe/Lutz ditch.  The FHIP denies that it assumed a duty to maintain the dilapidated Yupe/Lutz ditch, although there is evidence that the FHIP maintained the ditch since 1982.  Whether the FHIP owed a duty to Plaintiff is addressed in Plaintiff's Response to Defendant's Motion for Summary Judgment. [Docket 16]

In 2009, FHIP developed operation and maintenance guidelines (hereinafter referred to as "O&M manual") governing the operation of the irrigation project.  (Depo Exhibit 4 – Dockets 13-5 and 13-6)  The O&M manual requires that various employees maintain daily logs.  Those employees include the water master (irrigation systems manager), the ditch rider supervisor (supervisory irrigation systems operator), and the ditch riders (irrigation system operators).  *Id.* (Harmon 395-96)  In addition, the maintenance

supervisor (supervisory irrigation maintenance operations specialist) is required to direct the repairs and maintenance on the project and to ensure that all work orders are entered into a computer system called MAXIMO. *Id.* (Harmon 000395)

The daily logs and maintenance records were not produced as part of Defendant's initial disclosure. Plaintiff requested the logs and maintenance records during discovery by asking for those documents as part of the deposition duces tecum notices for each of the employees who were deposed. Beck Declaration at Exhibits D through K (deposition notices and deposition excerpts). In response, Brandon McKean, the ditch rider supervisor, produced his logs the day before his deposition. However, the Defendant did not produce any of the other records at that time - no maintenance records were produced for all of the work performed on the applicable ditch systems, nor were the daily logs of the water master or ditch riders assigned to the area.

During deposition testimony, the ditch riders and the water master confirmed their practice was to maintain daily logs during the 2012 growing season. They also confirmed that each year's logs were turned in to the FHIP office, at the end of the season, to be archived. One of the ditch riders, Jesse Rodriguez, explained that in preparing a statement in response to the Plaintiff's tort claim notice in 2013, he reviewed his logs to prepare the statement. Beck Declaration at Exhibit G (Rodriguez deposition) (pp. 32-33). Unfortunately, nobody knows what happened to the logs. The logs have simply vanished. One witness stated he believes his records were "disposed of." Beck Declaration at Exhibit J (Guardipee deposition) (p. 45, ll. 1-3).

Approximately 60 days after the deposition of Clifford Buckskin (the water master), Defendant produced records that apparently contained Mr. Buckskin's logs. (Beck Declaration at Exhibit A (Defendant's Second Supplemental Response to Plaintiff's Request for Production, dated July 11, 2016)). However, because they were produced after his deposition, Plaintiff could not ask Mr. Buckskin about the records in order to understand what his handwritten entries on the logs meant.

On July 11, 2016, Plaintiff served Defendant with additional discovery requests seeking information about production of the specific logs. Defendant refused to answer the discovery with any substantive response. (Beck Declaration at Exhibit B – Defendant's Response to Plaintiff's Second Request for Production dated August 10, 2016). Plaintiff was required to obtain the involvement of the Court's clerk. After a hearing with the Court's clerk on the matter, Defendant provided discovery responses indicating that the records could not be located. (Beck Declaration at Exhibit C – Defendant's First Supplemental Response to Plaintiff's Second Request for Production dated October 18, 2016)

The problem with the failure to produce the ditch rider logs is that many of the facts in this case could be resolved by looking at the logs. For example, it is a mystery to the FHIP who was opening the head gate to the Yupe/Lutz ditch that ultimately flooded the Harmon parcel. Lloyd Yupe testified that he never touched head gates because it was the ditch rider's responsibility. Jesse Rodriguez, one of the ditch riders assigned to the area, explained that he was responsible for opening and closing all of the head gates according to the water delivery schedule. He said that it was part of his regular daily routine, but that he only worked in the area every other weekend and on days when the regular ditch rider

was absent. However, Mr. Rodriguez denied that he ever touched the head gate directing water to the Yupe/Lutz ditch. He explained that he probably did not touch the head gate because he only worked in the area every other weekend and that he did not believe the Yupe/Lutz ditch needed water on the weekends. After being shown that water to the Yupe/Lutz ditch was scheduled for delivery each Sunday 2012, Mr. Rodriguez still denied he opened the head gate. The other ditch rider, Nick Broncho, also denied he ever opened the head gate to feed the Yupe/Lutz ditch. The mystery surrounding who was opening the Yupe/Lutz ditch head gate would likely be solved by examining the FHIP ditch rider logs.

The maintenance logs pertaining to the work performed on the ditch systems surrounding the Harmon parcel also contain important information relating to this case. Lloyd Yupe said that FHIP would ask him for permission to cross his property and perform maintenance on the ditch at the beginning of each irrigation season from 1982 through the 2012 flooding. However, the water master, Clifford Buckskin, believes that FHIP stopped maintaining the Yupe/Lutz ditch around 2000. Steven Guardipee, the maintenance supervisor, explained he did not know if anyone was performing maintenance on the Yupe/Lutz ditch but that there should be a record showing such maintenance. Defendant did not produce any of the maintenance records - no daily logs were produced from anyone performing work, nor computer entries into the MAXIMO system, for any work performed before 2012.

The FHIP acknowledged that in 2012, it performed ditch repair work on ditches adjacent to the Harmon parcel on multiple occasions to try to stop future flooding of the Harmon parcel. However, the Defendant has been unable to identify who performed the

work, when it was performed, or even what work was performed. The Yupe/Lutz ditch was also ditched out sometime after the 2012 flooding incidents and before the 2013 growing season. However, the FHIP cannot seem to find any documents to support the testimony of their own employees. The FHIP cannot produce the work orders that should have been documented in MAXIMO despite that being the record keeping process that was used. Mr. Guardipee believes that the records were destroyed for some unknown reason.

The logs and other records maintained by the FHIP related to this matter are critical to the Plaintiff's claims. Ultimately, the records would document the fact that the Harmons were making complaints about the ditch problems in 2011 and 2012. The ditch rider logs would detail the multiple calls made to, and discussions with, the ditch riders. It would also provide evidence that the FHIP was aware of the problems with the ditch systems adjacent to the Harmon parcel. The records would document what, if anything, the ditch riders did to investigate and remedy the ongoing problems reported by the Harmons.

The ditch rider logs would also reveal who was opening/closing the head gate to the Yupe/Lutz ditch. Mr. Yupe testified that the ditch riders were operating the head gate. The ditch riders said they did not know who was operating the head gate and did not have any record to review in order to answer the question more definitively.

The ditch rider logs would reveal whether the ditch riders were aware that the water master wanted locks placed on head gates to the ditches adjacent to the Harmon parcel. The logs would show whether the ditch riders were actually using the locks as instructed.

The maintenance logs from the employees themselves, as well as the records imputed into MAXIMO, would document the yearly maintenance Lloyd Yupe and Clifford

Buckskin testified was being performed on the Yupe/Lutz ditch system. The maintenance logs would document any FHIP efforts to correct the multiple flooding events in 2012.

The maintenance logs would document that the FHIP ditched out the Yupe/Lutz ditch system before the 2013 growing season and would show who authorized that maintenance. Ultimately, the maintenance logs would show that the FHIP had the ability to fix problems on the Yupe/Lutz ditch system, that the FHIP actually performed maintenance on the ditch in years leading up to 2012 and on multiple occasions in 2012, and that the FHIP re-ditched the Yupe/Lutz ditch sometime between the end of the 2012 growing season and the beginning of the next growing season.

## II. ARGUMENT

The Federal Records Act (FRA) is a collection of statutes that sets forth federal agencies' records creation, management, and disposal duties. 44 U.S.C.A. §§ 2901 et seq., 3101 et seq.,The Act provides in part:

> The head of each Federal agency shall make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities.

(44 U.S.C.A. § 3101.) As judicially interpreted, the legislative history of the Act establishes it is intended, expected, and positively desired that private researchers and private parties whose rights may have been affected by government actions to be able to have access to the documentary history of the federal government. *See* 15 Fed. Proc., L. Ed. § 38:16 (citing *American Friends Service Committee v. Webster*, 720 F.2d 29 (D.C. Cir. 1983)).

FHIP is a governmental agency tasked with the responsibility to keep and maintain records relevant to its operations, including the actions taken by the FHIP in this case. The O&M manual required that the FHIP employees maintain various records, including daily logs and maintenance records. Plaintiff notified the FHIP of its allegations that the FHIP failed to properly regulate the water throughout the 2012 growing season when the records were being created. The FHIP has either lost or destroyed these critical pieces of evidence in this case, despite having an affirmative duty under the Federal Records Act to preserve and maintain governmental records, the applicable daily log entries as well as records pertaining to the maintenance and repair work performed by the FHIP.

In addition to the requirements to preserve records under the Federal Records Act, it is well settled that a party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to discovery of relevant evidence. *Lopez v. Santoyo*, 2012 WL 5427957, at *6 (S.D.Cal. Nov. 7, 2012). The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation. *Patton v. Wal-Mart Stores, Inc.*, 2013 WL 6158467, at *6 (D. Nev. Nov. 20, 2013) (citing *In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006). If a party knows documents it should be preserving are lost or destroyed, the spoilation of said evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it. *Apple Inc. v. Samsung*, 888 F.Supp.2d 976, 998 (N.D.Cal. 2012).

In this case, there is no question that the ditch rider logs were either lost or destroyed. Both ditch riders assigned to the area acknowledge they were required to maintain logs. They further indicated they maintained logs in the year 2012. In fact, Jesse Rodriguez even acknowledges that in 2013, he reviewed his 2012 logs in order to prepare a statement in response to the tort claim notice.

There is also no question that the FHIP knew the evidence was relevant to the claims in this case. Furthermore, the Federal Records Act requires the FHIP to maintain such logs even if the FHIP did not know such documents would be important for this particular case.

The information contained in the ditch rider logs and ditch maintenance logs is critical to this case. The logs would provide evidence concerning what the FHIP personnel actually did with respect to monitoring the head gates surrounding the Harmon parcel. The logs would document the complaints from the water users, such as the Harmons. The logs would help explain how the FHIP investigated each of the complaints raised by the water users. The logs would explain what duties the FHIP assumed because maintenance activities should have been entered into MAXIMO each time the FHIP worked on the ditch system. However, none of the ditch rider logs or maintenance logs were produced in this case. It is apparent that the FHIP either lost or destroyed the evidence. The loss or destruction of the logs is especially concerning where a tort claim was filed in this case and where the witnesses relied upon the now missing logs to prepare statements in response to the tort claim.

Given the nature of the evidence which would be contained in the lost or destroyed records, the Court should presume that the destroyed evidence contains evidence that is unfavorable to the defenses in this case. The Court should also find that such evidence was adverse to the Defendant and conclude the following:

- FHIP was contacted on multiple occasions by the Harmons during the 2012 growing season, who were concerned about the ditch systems surrounding their property and the FHIP was aware of the problems;

- FHIP was aware that the ditch delivery systems to the private users surrounding the Harmon parcel was dilapidated during the 2012 growing season;

- FHIP regulated the flow of water to the ditch delivery system to private ditches surrounding the Harmon parcel in 2012;

- From 1982 to 2012 the FHIP operated and maintained the Yupe/Lutz water delivery system;

- FHIP tried to correct the Yupe/Lutz water delivery system on multiple occasions in 2012;

- The Yupe/Lutz water delivery system is a structure constructed and maintained by the FHIP;

- The Ellsworth and Yupe/Lutz head gates were turned on and off by FHIP employee ditch riders in 2012 including turning them on prior to the dates of the flooding events in question;

- FHIP knew that it should implement locks and head gates on the private ditches throughout the 2012 growing season to regulate the access and flow of water on the private ditches but failed to do so; and

- Despite knowing that the ditch systems were not properly maintained surrounding the Harmon parcel, the FHIP failed to take any steps to correct the known problems, restrict access to water users or regulate flow to water users.

## III. CONCLUSION

For the reasons stated above, the Court should grant Plaintiff's Motion for Spoilation Finding.

DATED this 18th day of November, 2016.

                                                    RUCHTI & BECK LAW OFFICES

                                                    /s/ Joel A. Beck

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of November, 2016, I caused the foregoing to be filed electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jessica Gunder
US Attorney's Office
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, ID 83712-7788
Jessica.Gunder@usdoj.gov

                                                  /s/ Joel A. Beck
                                                  JOEL A. BECK