UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DOUGLAS G. HARMON,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. 4:15-cv-00173-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

The Court has before it the United States' Motion to Dismiss (Dkt. 25). The motion is fully briefed and at issue. For the reasons explained below, the Court will grant the motion.

# BACKGROUND

The facts of this case were recited in the Court's March 24 Memorandum Decision and Order (Dkt. 27) ("Summary Judgment Order") and will be repeated here only as necessary for resolving the present motion.

The United States Bureau of Indian Affairs ("BIA") is responsible for managing and operating the Fort Hall Irrigation Project ("FHIP"), an agricultural irrigation system designed to deliver water to the Fort Hall Reservation in southeastern Idaho. On May 21, 2015, Plaintiff Doug Harmon filed this negligence action against the United States of

America, acting by and through BIA, alleging that the Bureau's negligence in overseeing the FHIP resulted in multiple flooding events in 2012 that damaged his farm crops.

On March 24, 2017, this Court issued a Memorandum Decision and Order granting in part and denying in part the government's Motion for Summary Judgment. The Motion was granted as to Harmon's theories of negligence premised on a voluntary assumption of duty to maintain private farm ditches and those premised on a duty imposed by BIA regulation. The motion was also granted as to Harmon's negligence claim stemming from the September 25, 2012 flooding incident. The Court denied summary judgment as to all remaining issues and claims.

On April 28, 2017, the United States filed the present Motion to Dismiss, asserting that this Court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The government argues that the alleged negligent actions are shielded by the "discretionary function exception" to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2660(a), and seeks to dismiss this action in its entirety. Harmon responds that the exception does not apply to the conduct raised in this lawsuit and that the matter should proceed to trial on the disputed facts.

## LEGAL STANDARDS

**1.     Rule 12(b)(1) - Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Rule 12(b)(1) in one of two ways. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). The first is known as a "facial" attack, and it accepts the truth

of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction. *Id.* The second method is known as a "factual" attack, and it does not assume the truth of plaintiff's allegations but instead challenges them by introducing extrinsic evidence, requiring the plaintiff to support his jurisdictional allegations with "competent proof." *Id.*

Here, the government has launched a factual attack. When considering such an attack, the Court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (internal quotations omitted). Where no evidentiary hearing is held, conflicts in the submissions by the parties must be resolved in the plaintiffs' favor. *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1160 (9th Cir. 2007).

2.   **FTCA and Discretionary Function Exception**

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 474 (1994). The Federal Tort Claims Act represents an unequivocal, but limited, waiver of the government's sovereign immunity. By statute, federal jurisdiction is established over civil suits for money damages against the United States:

for injury or loss property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or commission occurred.

28 U.S.C. § 1346(b).

Congress has carved out several exceptions to the FTCA's waiver of immunity. *See* 28 U.S.C. § 2680. These include the discretionary function exception, which provides that courts have no jurisdiction over any claim against the United States "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "In this way, the discretionary function exception serves to insulate certain governmental decision-making from judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy through the median of an action in tort." *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (internal quotation marks and citation omitted).

There is a two-part test for determining whether the discretionary function exception applies. *See United States v. Gaubert*, 499 U.S. 315, 322–23 (1991); *Berkowitz v. United States*, 486 U.S. 531, 536–37 (1988). First, the Court must determine whether the challenged acts "involv[e] an element of judgment or choice." *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to

adhere to the directive.'" *Id.* (quoting *Berkovitz*, 486 U.S. at 536). Second, the action taken or the decision made must be "of the kind that the discretionary function exception was designed to shield"—namely, actions and decisions grounded in social, economic, or political policy. *Id.* at 323. "The challenged decision need not be actually grounded in policy considerations, but must be, by its nature, susceptible to a policy analysis." *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998); *see also Gaubert*, 499 U.S. at 325 ("The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis"). Both prongs must be satisfied for the discretionary function exception to apply. *Id.* at 322–33.

Whether the exception applies is a question of law for the Court to decide. *See Kelly v. United States.*, 241 F.3d 755, 759 (9th Cir. 2001). Under Ninth Circuit authority, on a motion to dismiss, "the United States bears the burden of proving the applicability of one of the exceptions to the FTCA's general waiver of immunity." *Prescott v. U.S.*, 973 F.2d 696, 702 (9th Cir. 1992). As a remedial statute, the FTCA "should be construed liberally, and its exceptions should be read narrowly." *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002).

## ANALYSIS

1. **Alleged Negligent Conduct**

Before undertaking this two-part inquiry, the Court must identify the specific action or omission Plaintiff is challenging. *See GATX/Airlog Co. v. United States*, 286

F.3d 1168, 1174 (9th Cir. 2002). After this Court's Summary Judgment Order, only one theory of negligence remains at issue in this case—that the BIA failed to properly regulate water deliveries on the Fort Hall Irrigation Project to users who improperly operated or maintained their private ditches or headgates. *See Memorandum Decision & Order*, at 24–27, Dkt. 27. The Court must decide whether Harmon's remaining theory of recovery is cognizable under the FTCA in light of the discretionary function exception.

**2.      Step One: Does the Challenged Conduct Involve Judgment or Choice?**

Applying the two-step *Berkovitz* framework, the first inquiry is whether the challenged action involved an "element of judgment or choice." *Berkovitz*, 486 U.S. at 536. Harmon alleges two sources of a nondiscretionary duty here: the Fort Hall Irrigation Project Operation and Maintenance Guidelines ("O&M Guidelines") and BIA's voluntary assumption of duty. The Court considers each in turn.

   **A.      *O&M Guidelines***

Harmon argues that the FHIP O&M Guidelines required BIA to "properly regulate and control irrigation water delivery to water users" to control flooding. *See Pl.'s Br.* at 3, Dkt. 33. He cites to three particular provisions as evidence of this duty. *Id.* The first states that "[t]he Supervisory Irrigation System Operator . . . manages the distribution of water to each [ditchrider district]." *See FHIP O&M Guidelines* at 1-21, Dkt. 13-5. The second declares that the "[t]he [ditchrider] controls the water levels in canals and laterals to minimize fluctuation, measures the flow to the water user and records delivery information." *Id.* at 1-21. The third states that the watermaster and ditchrider "[r]eport[] if

excess water is spilling at wasteways or at the end of the distribution system and make[]
adjustments to diversions and deliveries as deemed necessary." *Id.* at 1-30, 1-31.

These provisions are both imbued with discretion and unrelated to the challenged conduct in this case. Most naturally read, the O&M Guidelines merely direct BIA employees to control water flows for supply and demand fluctuations. Nowhere do they demand action in response to water users who failed to properly operate or maintain their private farm ditches or headgates. Even if the Court were to infer such a duty, it's clear that the O&M Guidelines do not mandate that BIA regulate water flows to problematic users in any *specific* manner. The manual does not, for example, impose a duty to use locks and collars, prescribe how or when such instruments should be employed, or explain how to balance flooding concerns with other policy interests. Any such decisions are left to the discretion of BIA employees. Indeed, the O&M Guidelines vest BIA officials with broad discretion in controlling water flows in the FHIP. These "element[s] of judgment or choice" are sufficient to satisfy the first prong of the *Berkovitz* analysis.

### B.    *Voluntary Assumption of Duty*

Harmon's second argument concerns the application of the voluntary assumption of duty doctrine. The Court previously concluded, in its Summary Judgment Order, that a genuine issue of material fact exists as to whether BIA undertook a voluntary duty to regulate water use to problematic users on the FHIP. The parties disagree as to how a voluntary undertaking impacts the discretionary function analysis.

Harmon appears to argue that once an agency has exercised its discretion to

undertake a duty—and engendered reliance on that undertaking—the United States cannot avail itself of the discretionary function exception. *See Pl.'s Br.* at 4, Dkt. 33 ("When a duty is assumed . . . , performance of that duty in a non-negligent manner *is not discretionary*.") (emphasis in original). This position finds no support in the cited authority. *Indian Towing Co. v. United States*, 350 U.S. 61 (1955) was not addressed to the discretionary function exception, nor does it stand for the proposition that all voluntary undertakings are non-discretionary. Rather, the case embodies the general principle that government duties lacking choice or policy considerations are not shielded from suit under the FTCA. *See, e.g.*, *Berkovitz*, 486 U.S. at 538 (*Indian Towing* "illuminates the appropriate scope of the discretionary function exception" because making sure a lighthouse is operational does "not involve any permissible exercise of policy judgment."); *Alfrey v. United States*, 276 F.3d 557, 567 (9th Cir. 2002) (distinguishing *Indian Towing* by arguing that "a lighthouse light is either on or off. . . . The existence of a range of options [in conducting a prison cell search] makes this case different and gives rise to discretionary function immunity."); *Nat'l Union Fire Ins. v. United States*, 115 F.3d 1415, 1419 (9th Cir. 1997) ("In *Indian Towing*, no one made a discretionary decision to leave the light out—the people who were supposed to maintain it simply failed to do so.").

    On the other extreme, the government argues that a voluntary assumption of duty is irrelevant to the threshold jurisdictional determination under the Federal Tort Claims Act. *See Pl.'s Br.*, at 3, Dkt. 30-1. This view is unsupported by the cited authorities,

which stand for a more narrow proposition—that actual *negligence* is irrelevant to determining whether an act falls within the discretionary function exception. *See, e.g.*, *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1029 (9th Cir. 1989) ("[N]egligence is simply irrelevant to the discretionary function inquiry."); *Mitchell v. United States*, 787 F.2d 466, 468 (9th Cir. 1986) ("Negligence, however, is irrelevant to the discretionary function issue."). That is, the discretionary function exception function does not depend on whether the government was negligent in performing or failing or perform a function or duty, but rather the nature of the function or duty itself. *See also* 28 U.S.C. § 2680(a) (excluding "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, *whether or not the discretion involved be abused*.") (emphasis added).

The resolution of the parties' dispute lies somewhere in the middle. The Ninth Circuit has not squarely addressed the relevance of the voluntary assumption of duty doctrine under the discretionary function analysis. However, other courts to consider the question have recognized that a voluntary undertaking—just as an agency statute, regulation, or policy—can establish a mandatory duty that implicates liability under the FTCA. *See, e.g.*, *Wilburn v. United States*, 616 F. App'x 848, 861 (6th Cir. 2015); *Ochran v. United States*, 117 F.3d 495, 506 (11th Cir. 1997); *In Matter of Complaint of Ingram Barge Co.*, 194 F. Supp. 3d 766, 799 (N.D. Ill. 2016); *Chang–Williams v. Dep't of the Navy*, 766 F. Supp. 2d 604, 618 (D. Md. 2011). Whether or not the government is

protected from liability depends on whether the voluntary undertaking itself involves policy-based discretion of the type implicated by the FTCA's discretionary function exception. *Accord Ingram Barge Co.*, 194 F. Supp. 3d at 799 (reviewing the relevant case law and concluding the same).

For example, courts have found that the discretionary function exception does not shield the disregard of a promise to perform specific actions on a victim's behalf, because this type of voluntary undertaking leaves no room for discretion or policy analysis. *See, e.g., Chang–Williams*, 766 F. Supp. 2d at 618 (concluding that the discretionary function exception does not insulate the failure to follow through on a promise to "specific individuals that they would be protected by specific procedures that the Marine Corps intended to implement"); *Wilburn*, 616 F. App'x at 861 ("[A] direct representation by the government to a domestic violence victim that it will take certain action, followed by a failure to take that action" is not subject to policy analysis and therefore not protected by the discretionary function exception); *Hurd v. United States*, 134 F. Supp. 2d 745, 768– 69 (D.S.C. 2001), *aff'd*, 34 Fed. Appx. 77 (4th Cir. 2002) (concluding that once the Coast Guard makes the decision to render emergency aid, the implementation of that decision is governed by the "clear mandates of the Coast Guard," not policy judgments, is and therefore subject to FTCA liability); *see also Ochran*, 117 F.3d at 506 n.7 (concluding that a generalized promise to provide protection to a government witness constitutes a discretionary function, but clarifying that the government may be liable if it "voluntarily assumed a specific duty that involved no policy judgments.").

Conversely, the implementation of a voluntary undertaking *is* shielded by the discretionary function exception where the undertaking itself implicates discretion and policy considerations. For example, in *Ingram Barge Co.*, the court held that the discretionary function exception protected the Army Corps' decision to prematurely raise a dam gate, after it allegedly offered to lower the gates to assist a vessel in safely navigating the canal. 194 F. Supp. 3d at 800. Even assuming the presence of detrimental reliance by the vessel, the court concluded that the government's actions did "not amount to an abject failure to follow through on a certain process. To the contrary the record reflects that there was no specific agreement on how long the gates would stay down." *Id.* Because the Army Corps' decision of *how* to assist the vessel involved discretion and policy analysis, the discretionary function exception applied. *See also, e.g.*, *Ochran v. United States*, 117 F.3d 495, 506 (11th Cir. 1997) (concluding that alleged negligence in fulfilling a generalized promise to protect a government witness was not actionable under the FTCA, where it involved the exercise of discretion and policy judgment); *Marbulk Shipping, Inc. v. Martin–Marietta Materials, Inc.*, 271 F. Supp. 2d 1374, 1381 (S.D. Ala. 2003) (concluding that the Coast Guard's voluntary undertaking to place navigational aids was protected by the discretionary function exception "[b]ecause the same policy considerations that underlie the decision *whether* to mark a hazard also underlie the decision *how* to do so"); *Shuler v. United States*, 448 F. Supp. 2d 13, 21 (D.D.C. 2006), aff'd, 531 F.3d 930 (D.C. Cir. 2008), *aff'd*, 531 F.3d 930 (D.C. Cir. 2008) ("Absent any claim of an explicit promise to provide a specific type of protection [to the government

informant], the defendant's protective services constitute a discretionary function under the FTCA.").

Here, just as in *Ingram Barge Co.*, *Ochran*, *Marbulk Shipping*, and *Shuler*, BIA's decisions regarding how to regulate problematic water users involved an element of judgment and choice. Even assuming that BIA made assurances that it would install locks and collars on the headgates at issue,[1] it did not commit to a specific course of action. Harmon offers no evidence that there was an agreement as to the particular headgates on which locks and collars would be placed, where any collars would be set, who would have control of the locks, when the devices would be installed, and on what conditions they would be removed. Each of these decisions involves a range of options calling for BIA's exercise of deliberation and choice. *Cf. Alfrey v. United States*, 276 F.3d 557, 567 (9th Cir. 2002) ("The existence of a range of options [in the undertaking] . . . gives rise to discretionary function immunity."). Accordingly, BIA's alleged voluntary undertaking to regulate problematic water users also satisfies the first prong of the *Berkovitz* test.

3.   **Step Two: Were BIA's Actions Susceptible to Policy Considerations?**

Having determined that each of the duties alleged by Harmon involves an element of judgment or choice, the Court next considers whether BIA's decisions were "based on considerations of public policy," and therefore "of the kind that the discretionary function

---

[1] Douglas Harmon stated that, on various instances, BIA employees agreed to place locks and collars on certain headgates thought to be the cause of flooding on his property. *See D. Harmon Dep.* at 26:25–30:21. For purposes of the present Motion, the Court must view the record in the light most favorable to Harmon and assume that such assurances were made.

exception was designed to shield." *Berkovitz*, 486 U.S. at 537.

The Court concludes that the BIA's actions in this case—i.e., its decisions when, whether, and how to install locks and collars or otherwise regulate flows to problematic users—are susceptible to policy analysis. BIA asserts that flow control decisions involve a number of competing considerations, including: (1) timely and equitable water access, (2) crop damage or losses, (3) water waste, and (4) flood control. *See Def.'s Br.* at 9–10, Dkt. 30-1. The FHIP O&M Guidelines identify similar policy considerations. *See* Dkt. 13-5, at 4, 29 (economic development); Dkt. 13-5 at 29 (water access); Dkt. 13-6, at 47 (same); Dkt. 13-5, at 12 (fish and wildlife); Dkt. 13-6, at 44, 48 (same); Dkt. 13-6, at 44 (water waste); Dkt. 13-6, at 44–45, 47, 48 (flood control); Dkt. 13-5, at 29 (staffing and logistics). BIA's response to flooding on the Harmon parcel therefore involved a careful balance among competing users and policy considerations such as economic development, public safety, and sustainable resource management.

The actions challenged here are much like water flow control decisions previously deemed to fall within the discretionary function exception. For example, in *Sauders v. S.C. Pub. Serv. Auth.*, 856 F. Supp. 1066, 1074 (D.S.C. 1994), landowners alleged that the operators of the Cooper River Rediversion Project had negligently released "excessive flows" into the Santee River, causing multiple flooding events. The district court held that these decisions were shielded by the discretionary function exception, as they were susceptible to policy concerns involving navigation, hydropower production, fish and wildlife resources, water quality, and economic development. *Id.*

Other courts have likewise held that government activities related to water flows and flood control inherently involve policy considerations. *See, e.g.*, *A.O. Smith Corp. v. U.S.*, 774 F.3d 359 (6th Cir. 2014) (discretionary function exception barred flood victims' claim that Army Corps negligently failed to discharge excess water from the Old Hickory Dam, since appropriate response was subject to competing policy goals, including power generation, navigation, and downstream conditions); *Firebaugh Canal Water Dist. v. U.S.*, 712 F.3d 1296 (9th Cir. 2013) (Department of the Interior's provision of irrigation water without adequate drainage was protected by discretionary function exception, as DOI's actions in developing drainage solutions implicated environmental policy, economic policy, and fiscal limitations); *Spillway Marina, Inc. v. United States*, 445 F.2d 876, 878 (10th Cir. 1971) ("Decisions of when to release and when to store required the use of discretion . . . [and] depend[] upon a great number of variable factors, such as navigation conditions and needs, irrigation requirements, rainfall, etc.").

For these reasons, the Court concludes that BIA's actions in response to problematic water users involved "the type of economic, social and political concerns that the discretionary function exception is designed to protect." *Miller*, 163 F.3d at 595. Accordingly, the Court concludes that the government has also satisfied the second part of the *Berkovitz* test, and that the discretionary function exception therefore applies.

## CONCLUSION

For the foregoing reasons, the Court is convinced that the conduct challenged in this case falls under the discretionary function exception of the FTCA and that the United

States is therefore immune from liability. Harmon can point to no agency policy, regulation, or statute which specifically prescribed a course of action for BIA employees to follow under the circumstances of this case, and any duty that the agency voluntarily assumed likewise involved an element of choice or discretion. BIA's judgments were also grounded in policy considerations that the FTCA insulates from judicial second-guessing. Accordingly, the Court will grant the government's Motion to Dismiss (Dkt. 30) and dismiss this case in its entirety, without prejudice, for lack of subject matter jurisdiction.

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion to Dismiss (Dkt. 30) is **GRANTED** and this case is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

2. The Court will enter a separate judgment in accordance with Fed. R. Civ. P. 58.

DATED: June 12, 2017

B. Lynn Winmill
Chief Judge
United States District Court